IRIZARRY v. TRUJILLO, MERCADO & CO. ET AL.

APPEAL from the District Court of Mayagüez.

No. 401.—Decided January 31, 1910.

SERVITUDE OF WATERS—EVIDENCE—BURDEN OF PROOF.—The burden is on the plaintiff to prove the allegations made in the complaint, and his action must fail if no evidence be given on either side.

ID.—EJECTMENT.—The present case is quite analogous to one of ejectment and is governed by the principle that the plaintiff must recover on the strength of his own title and not on the weakness of the claim made by the defendant in possession.

ID.—PREPONDERANCE OF EVIDENCE.—In civil cases a mere preponderance of evidence is sufficient whereon to base a judgment for the party in whose favor it turns.

ID.—By preponderance of the evidence is not meant a majority of the witnesses testifying in the case, but an excess in the weight of evidence considering the testimony of the witnesses, the documental proof, and all the facts and circumstances attending the transaction.

ID.—CONSIDERATION OF THE EVIDENCE BY THE TRIAL COURT—CONFLICTING EVIDENCE.—In jury trials, as in trials by the court alone, the verdict of the jury or the decision of a judge, based upon the conflicting evidence weighed and reconciled by the judge or the jury, will not be disturbed, unless it appears from the record that such verdict or decision was the result of partiality, prejudice, or passion, or is for other reasons manifestly unjust.

ID.—PRIVATE WATERS.—The waters of the *quebrada* Cañitas cannot be held to be public waters, because it is shown by the evidence that they have been used and considered as private waters since the year 1855.

ID.—PARTITION OF WATERS.—The plaintiff having failed to prove his right to the use of the waters of the *quebrada* Cañitas, and it having been admitted by the defendants that plaintiff was entitled to the use of a third of the said waters, and the defendants being the owners of two of the three parcels of land crossed by the said *quebrada*, and the plaintiff being the owner of one of the said parcels of land, and the right to the use of said waters having been determined by an agreement in the year 1887 by the owners of the said lands, at which time they were in the possession of the parties to said agreement, upon whose rights the parties to this suit base their claims, the distribution and use of said waters made by the judgment appealed from is proper and it must be affirmed.

The facts are stated in the opinion.

*Mr. Eduardo Acuña* for appellant.

*Messrs. López, Tord & Canals* for respondents.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This was the last case submitted for decision in the month of June, last year, and the time during that term being too brief for a proper consideration of the question involved, the decision was postponed until after the summer vacation. The voluminous record, the long and intricate statement of facts, the number of witnesses and the pressure of business have delayed the court in arriving at a conclusion until the present date. The litigation involves the rights to the use of certain waters, for the purposes of irrigation, the watering of live stock, and the making of sugar, about which the respective parties are contending, and which are before us for final determination. The complaint herein was filed in the District Court of Mayagüez, on August 31, 1908. Briefly, it sets out the claims of the plaintiff, as follows:

Gavino Irizarry y Pabón, a resident of San Germán, brings a real action against Trujillo Mercado & Co., a partnership established in the city of Ponce, and against Rafael Muñoz y Toro, a resident of San Germán, to maintain in force a servitude of water and for the extinction of alleged rights thereon, on the part of the defendants, basing the said action on the grounds herein set forth.

The several allegations of the parties may be combined into the following

## STATEMENT OF THE ISSUES.

Plaintiff alleges in the first paragraph of his complaint that:

"Gavino Irizarry y Pabón is the legitimate owner of an estate called 'Tomino y Amparo,' devoted to pasture, woodland, underbrush, small fruits and the raising of cattle, situated in the ward of 'La Parguera,' in the municipal jurisdiction of Lajas. The said estate is composed of 614 *cuerdas* and improvements; and is bounded on the east and north by lands belonging to Gavino Irizarry and Antonio Bianchi, on the west by lands of Ulises López, and on the south by lands of the said López and by the saltpeter beds on the sea. The said property was acquired by purchase from Mrs. Santia and Mrs. Elvira Olivieri by a deed executed in Yauco before Benito Forés y Morazo, a notary public, on November 29, 1904, a copy recorded in the Registry of Property of San Germán being filed herewith. Said deed contains the following clause:

" 'Fifth. It is agreed that with the sale of the property all the rights and servitudes of waters pertaining to the same are alienated and transmitted by the vendors, according to a document delivered by the vendors to the purchaser in the same act.' "

This allegation is admitted by the defendants.

In the second paragraph of his complaint the plaintiff further alleges that:

"Rafael Muñoz y Toro is the owner, likewise, of a sugar-cane plantation called 'Hacienda Beatriz,' situated in the ward of Sabana Yeguas in the municipal jurisdiction of Lajas, composed of 344 *cuerdas* and 52 hundredths; there are some establishments, a dwelling house and other buildings on the place, and said plantation is bounded on the north by lands belonging to Juan Angel Tió y Malaret; on the west by lands of Mrs. Florencia Fradera y Pagán, formerly, and now of Eurípides López, and by lands belonging to Mr. Laureano Rodríguez; on the south by lands of Laureano Rodríguez and of Ulises López; and on the east by lands of Mr. Segundo Tomás Fradera. The said Rafael Muñoz y Toro is also owner of another

estate situated in the same ward of Sabana Yeguas, of 26 *cuerdas* and 59 hundredths, bounded on the north by a country road which gives entrance to the lands belonging to the plantation 'Beatriz'; on the south and east by lands of Laureano Rodríguez; and on the west by lands of Rafael Cruz. He acquired these properties by purchase from Mrs. Francisca Amalia and Mrs. María Beatriz Fradera, by a deed executed in San Germán before the notary public, Benito Forés y Morazo, on July 14, 1906.''

The defendants admit the foregoing facts with the following explanation:

''That the farm of 26 *cuerdas* and 59 hundredths described in the correlative allegation of the complaint, according to the defendants' information and belief, was formerly the property of Mr. Ramón Jacome Pagán, and as such, according to the private agreement filed with the complaint, has always been irrigated with one-third of the volume of waters of the brook called 'Cañitas,' and the said defendants claim that the said one-third of the volume of waters of the said brook belongs to them as owners and lessees, respectively, of the aforesaid finca.''

In the third paragraph of the complaint it is alleged that:

''Muñoz gave in lease the aforesaid two properties to the partnership, Trujillo Mercado & Co., by a deed executed in Ponce before the notary public, Nemesio R. Canales, on July 8, 1908, and the said lessees are in possession as such of the said properties the contract of lease being for the period of six years, which could be extended for another six years, and there is no reference whatever in the said contract with regard to the use of the waters of the brook 'Cañitas.' ''

This allegation is admitted by the defendants.

The plaintiff, in the fourth paragraph of his complaint, alleges that:

''A brook called 'Cañitas' springs from a part of the lands belonging to the old plantation 'Beatriz,' which lands now belong to Juan Angel Tió, and are situated in the ward of Sabana Yeguas, in the municipal jurisdiction of Lajas, judicial district of Mayagüez, and the said brook, following its natural course from north to south,

after leaving the above-mentioned lands runs through the western part of the property of Eurípides López, which formerly belonged to the said plantation 'Beatriz,' crosses the said property of Muñoz— that is, that of 26 *cuerdas* and 59 hundredths, and, still following its natural course, runs through other estates which formerly were also part of the plantation 'Beatriz,' and comes to flow over the farm 'Tomino y Amparo,' which is the property of Gavino Irizarry y Pabón, and who makes use of those waters, as the former owner did, for the maintenance of pasture and for the supply of the cattle exist- ing on the property, which is exactly what constitutes the servitude of water referred to in the fifth clause of the purchase deed executed in favor of the party represented and which clause has been inserted in the first part hereof.''

This allegation is admitted as far as the description of the rise and course of the said brook ''Cañitas'' is concerned, but the defendants deny that plaintiff has ever made use of the total volume of water of the said brook, the fact being that only one-third of such volume belongs to the farm owned by the said plaintiff.

In the fifth paragraph of the complaint the plaintiff alleges that:

''When the old plantation 'Beatriz' wholly belonged to Tomás Fradera, he made use of the waters of the brook 'Cañitas' by causing the same to run through a straight ditch from east to west and which is now situated on the south of the property of Eurípides López, in an eastern direction, and by building a dam near the bridge which existed on the road leading from Guánica to Boquerón. As those waters had the character of public waters, inasmuch as they ran through their natural beds, following the boundary of the lands sit- uated on the west of the plantation, Domingo Olivieri, owner of the lower lands (now belonging to the party plaintiff), who ought to have had, and did have, a right to the use of said waters, instituted a proceeding of injunction against Fradera, which was decided in favor of Olivieri, and which caused the owners of the higher lands, one of whom was Fradera, to enter into an agreement, whereby the said Fradera was allowed to take a part of said water from the aforesaid ditch to fill the cistern and reservoirs so as to use it for the manu- facture of sugar, but he was allowed to do that upon the fulfillment

of certain requirements as, for example, the construction of a masonry ditch, distributers and other conditions which the said Fradera did not comply with, who, notwithstanding, still continued making use of the waters, improperly and surreptitiously, for the manufacture of sugar and sometimes for the irrigation of a small extent of land; but when the waters failed to reach the farm 'Tomino,' the owners and lessees thereof went to the opening and destroyed the dam, which was made of mud, without asking the consent of, and without any opposition from, the owner of the plantation 'Beatriz,' and the party plaintiff has acted in the same manner without any opposition on the part of Rafael Muñoz, who is the present owner of the said plantation. There is filed herewith an uncertified copy of the proceedings of injunction, a certificate of the secretary of the court to the effect that the original thereof has not been found, a copy of the deed containing the agreement made by Olivieri, Fradera and others, and a sketch with regard to the system of irrigation.''

The defendants deny this paragraph in the following words:

''We deny the fact that the waters of the brook 'Cañitas' have ever been considered as public waters because they have always been used for private purposes. We deny also, under information and belief, that the use of said waters has ever been the object of an action of injunction decided against Fradera or any other person who has ever been owner of the plantation 'Beatriz.' We accept the existence of the private agreement with regard to the distribution of water referred to by the plaintiff in the correlative allegation of his complaint. And we also deny that the owners of the plantation 'Beatriz' have ever been deprived of the use of two-thirds of the volume of water of the brook 'Cañitas.' And we deny that the copy of the proceedings of injunction, filed with the complaint, is a genuine and faithful copy of the original thereof, and this latter denial is made for the proper legal effects.''

In the sixth paragraph of his complaint it is alleged by the plaintiff that:

''The extent of the lands belonging to the plantation 'Beatriz' has been diminished, after the death of Fradera, on account of several segregations made in favor of different persons who do not make use

of any right in regard to the water of the brook 'Cañitas' in so far as the taking of water from the ditch referred to in the allegation fifth is concerned, nor has any of them recorded in the registry as a property right a servitude with regard to the waters of the brook 'Cañitas,' nor has Rafael Muñoz recorded any such right with regard to that part of the plantation which now belongs to him.''

To this the defendants reply in the following words:

''We deny the *sixth* allegation of the complaint, and do assert that the right to the waters of the brook 'Cañitas' has always been mentioned in every deed which has been executed with regard to the transmission of ownership of the plantation 'Beatriz,' which is ·now the property of the defendant Muñoz.''

The seventh paragraph of the complaint is in the language following:

''The establishments for the grinding of sugar-cane have not been used for about five years on the plantation 'Beatriz,' and when the same were leased to Trujillo, Mercado & Co., the latter agreed not to use such establishments and to take the canes to the plantation 'Rufino' at Ponce to have them ground.''

This is admitted by the defendants.

The plaintiff further alleges in the eighth paragraph of his complaint that:

''Recently, the lessees of the plantation 'Beatriz,' believing themselves to have a right with regard to the water of the said brook, because they claim that the same was granted to them by Rafael Muñoz (when the latter could not grant that which did not belong to him), the said lessees, through an overseer and other employes, made the ditch referred to in the fifth allegation deeper at a place near the natural bed of the brook, and through that part they take all the waters, preventing thereby the same from running through their natural course. Thus the waters of the brook do not reach the land belonging to the party plaintiff, making the numerous cattle grazing thereon liable to die from thirst.''

This paragraph is denied to some extent in the following words:

"We deny that Trujillo, Mercado & Co. have ever obstructed, or interfered with, the use, on the part of the defendant, of the portion of the volume of waters of the brook 'Cañitas,' which belongs to him as owner of the farm described in the *first* allegation of the complaint, and do assert that we have always acknowledged, and are ready to acknowledge, at any time that the said plaintiff, as owner of the said estate, has a right to the use of one-third of the volume of water of the said brook."

In the ninth paragraph of the complaint the following allegation occurs:

"The said lessees, through their overseer, do not allow the party plaintiff to clean the natural bed of the brook in that part where the same crosses the farm of 26 acres and 59 hundredths and have gone so far as to menace the person in charge of the property of the party plaintiff to criminally prosecute him if he should enter into such farm to make the said cleaning."

This is positively denied by the defendants.

The tenth paragraph of the complaint sets out the following allegation:

"The acts committed by the lessees, Trujillo, Mercado & Co., greatly prejudice the interests of the party plaintiff, causing him considerable damages, because he has been deprived of the use of some waters which legally belong to him and by the want thereof the numerous cattle grazing on the land will be lost, should a drought, like the one suffered some days ago, come again; and said damages will be determined at the proper time if, during the pendency of this suit, the said lessees should continue to take, improperly and without any right whatsoever, the waters of the brook 'Cañitas.'"

This paragraph is roundly denied by defendants.

In the eleventh and last of his allegations, the plaintiff says that:

"With regard to the brooks 'Mameyes' and 'Mondongo,' the latter has never flowed into the brook 'Cañitas,' and more than 30

years have elapsed since the former has failed to flow into the said brook 'Cañitas' so as to increase the volume of waters thereof for purposes connected with the distribution of said waters between the higher and lower lands.''

A qualified denial of this paragraph is made by the defendants in the following words:

''We lack sufficient information with regard to the correlative allegation of the complaint, and therefore we do deny it.''

The plaintiff concludes his complaint with the following prayer:

''By virtue of the foregoing I pray the court to give proper course to this complaint and finally render judgment maintaining the right of servitude with regard to the waters of the brook 'Cañitas' belonging to the party plaintiff, forbidding the defendants to interrupt or obstruct, in any way whatsoever, the natural course of the said brook, and that the alleged right claimed by the latter to take the waters from the ditch referred to in the fifth allegation, be declared to have been extinguished, and to tax the costs against the said defendants.''

On the other hand the defendants pray the court as follows:

''By virtue of the foregoing we pray the court to render judgment at the proper time, dismissing the complaint, and to declare thereby that the defendants, as owners and lessees of the plantation 'Beatriz,' have a perfect right to the use and enjoyment of two-thirds of the volume of waters of the brook called 'Cañitas,' and to impose the costs upon the plaintiff.''

On February 17, 1909, the case came for trial, in the regular and usual manner, and a long array of evidence, both oral and documental, was presented by the respective parties and considered by the trial court. On March 6, judgment was rendered declaring that the defendants, in their capacity as owners and tenants of the estate ''Beatriz,'' have the right

to use and to enjoy two-thirds of the amount of the waters of the brook called "Cañitas" and that the plaintiff has the right to the use and enjoyment of the other third part of the said waters, in the use and enjoyment of which he has been disturbed by the defendant; and ordering that the defendants shall not interrupt nor hinder the natural course of the said stream further than may be necessary to detain the two-thirds of the amount of its waters which belong to them, and that each party pay his own costs.

A statement of the case was duly made, approved and filed on April 2, 1908. The plaintiff, on March 15, gave due notice of appeal on the following grounds, to wit:

1st. Insufficiency of the defendant's proof;

2d. Error in the consideration of the plaintiff's evidence;

3d. Error made by the court in the questions of law proposed and decided.

The transcript was filed in this court on May 3 last, and the case was submitted on June 8, on briefs and without oral argument; the court conceding to the parties 10 days time thereafter within which to file their respective briefs and written arguments.

Both the briefs having been filed during the last week in June the case was duly taken under advisement until a later term of this court.

In accordance with the method followed by counsel, we will first consider the facts on which the judgment of the district court was founded. At the risk of being prolix and wearisome we have thought it best to make an exhaustive review of all the evidence, and to note fully all the facts that could be claimed by either party to have any direct bearing on the case.

The material facts contained in the record, in so far as they go to show the claim or right of either party to use the

waters of the brook called "Cañitas," or that they had used the said waters, are contained in the following:

## ABSTRACT OF THE EVIDENCE.

"A. It appears from a simple copy of a document presented, that Domingo Olivieri, the former owner of the property referred to by plaintiff in this suit, in the year 1855, requested of the judge of first instance at San Germán, an order prohibiting the owners of the lands adjacent to his property from obstructing the natural course of the waters of the brook 'Cañitas,' which, after having traversed the said adjoining lands, ran through his property. In his petition he requested that the owners of the respective lands be summoned to reply to certain questions inserted in said petition in order that the judge might be convinced by their testimony of the fact that he was entitled, by nature and by law, to the use of the waters of said brook, and that his petition was just and well founded. Together with said petition, he sent a plan of his property and the adjoining lands, showing the course of the waters of the brook referred to.

"On January 24, 1855, the judge of first instance at San Germán issued an order, admitting the petition and directing that an investigation be made in regard to the truthfulness of the facts set forth in the questions inserted in the said petition, in order that, in view of the facts ascertained by said investigation, he might be able to take such action in the matter as might be proper.

"In consequence of the aforesaid order, the witnesses of the petitioner were summoned, who, in accordance with the petition, were to testify under oath concerning certain particulars indicated in the petition above mentioned—that is to say, they were to state:

"First. Whether they were legally disqualified to testify as witnesses in this case.

"Second. Whether the stream of the brook 'Cañitas' has its source on the lands of Teodoro Jacome Pagán, and after continuing its course within the limits of the same, and receiving the waters of the brooks, named 'Mamey' and 'Mondongo,' traverses the lands of Fradera Hermanos and those of César Alejandro Hasdre, whence, following its natural course, it reaches the property of Domingo Olivieri, where it branches off in different directions.

"Third. Whether it is true that this is the only water available on Olivieri's property, consisting of 500 *cuerdas* of land, and that without said water he would be under the extreme necessity of aban-

doning said land or traveling about a league in order to get the necessary water; and that the same thing would happen to other farmers of the district, who used to get their supply of water on the property of said Olivieri from the brook referred to.

"Fourth. Whether it is likewise true that in spite of the fact that the brook 'Cañitas' receives the waters of the other brooks called 'Mamey' and 'Mondongo,' the scarcity of water prevailing in the same during a dry period of moderate duration, is such that said brook hardly furnishes the amount of water needed by the farmers of the said district, it being indispensable during such periods to examine all the ditches and to clean them well in order to be able to get water from the said brook, which was sometimes done by the herdsmen of Domingo Olivieri, named Félix Alameda and José Báez.

"Fifth. Whether it is likewise true that the obstruction of the bed of the brook is partly caused by the cattle of Teodoro Jacome Pagán, which are pasturing within an inclosure precisely at a point where the waters of the brook are running through his lands, which is the reason why Domingo Olivieri, and the other farmers, who need the water of said brook, sometimes have not sufficient water, and, besides, the water is not as clean as it ought to be, because it has happened several times that in the canyons formed by the brook, especially on the lands of Teodoro Olivieri, the cattle, when going to those canyons in order to drink, get stuck in the mud, and unless some person arrives at the place at that moment and helps the cattle in extricating themselves, the latter perish in the stream, and the putrefaction of their carcasses contaminates the water, which is to be utilized by those farmers who are the last to get the same.

"Sixth. Whether it is a positive fact that Domingo Olivieri on several occasions has been obliged to complain to Tomás Fradera and Ramón Pagán as attorney in fact of his father, Teodoro, because they had obstructed the waters of the brook 'Cañitas,' and used the same on their cultivated lands at a time when Olivieri had no water.

"Seventh. That the aforesaid Fradera and Pagán be required to state whether the contents of the foregoing questions are true in all their parts; and that the latter be further asked whether it is also true that, on several occasions, he has assisted Olivieri with his workmen in the cleaning of the source of the brook, which is a simultaneous obligation on all those who are entitled to the use of the waters of the same.

"Eighth. That the witnesses be required to testify whether the facts mentioned in the foregoing questions are public and well known

facts—that is to say, facts publicly discussed and talked about by the people—and whether they have been testified to by the witnesses as such public and well-known facts.

"The first witness, José María Báez, testified in answer to the foregoing eight questions as follows:

"As to the first question, he stated that he is in no way disqualified to testify as a witness in this suit.

"In answer to the second question, he stated that as an immediate neighbor of the properties of the persons, whose names are mentioned in connection with the matter, he knew for certain and beyond all doubt that the facts referred to in said second question were true, and that he had heard nothing to the contrary.

"As to the third question, he stated that for the same reason he knew for certain that the facts mentioned therein were true.

"In regard to question number four, he said that the contents of said question were absolutely true inasmuch as he himself had been, and still was, in charge of the cleaning of the ditches in order that the cattle of Domingo Olivieri might have water.

"Concerning the contents of the fifth question, he testified that everything stated in said question was positively true, since he him-self had seen and observed it.

"In regard to question number six, he stated that he also knew for certain the facts set forth therein, and that they were true beyond all contradiction.

"Concerning the seventh question, he said that he was not comprised in the number of witnesses who were to testify regarding the same.

"In answer to the eighth question, he testified that he considered the facts stated as public and well-known facts, as facts which were publicly discussed and talked about. And all those statements he made under oath, and then confirmed and ratified the same.

"The second witness, Félix Alameda, after having been properly sworn by the judge of first instance, testified in answer to the aforesaid eight questions as follows:

"No. 1. That he was not legally disqualified to testify in this suit.

"No. 2. That, inasmuch as he knew the lands and brook referred to in this question by reason of the fact that he had been a herdsman on said lands and brook, he knew for certain that all the facts mentioned in said question were true.

"No. 3. That everything stated in said question is true.

"No. 4. That the statements therein contained are true; that he was one of those engaged in cleaning the ditches to prevent the creek from getting dry and the cattle from dying on that account.

"No. 5. That the statements therein contained are true from his own evidence.

"That it is also true that he took a hand in letting on the waters obstructed by Tomás Fradera and Ramón Pagán.

"No. 7. That he is not concerned in this question.

"No. 8. That his statements in regard to the foregoing questions are well-known facts. He is 40 years old, married, and a farmer.

"The third witness, Ramón Jacome Pagán, testified under oath that he was born in, and is a resident of, the district, and in regard to the questions said: 1st, He is not disqualified; 2d, 3d, 4th and 5th, He is not concerned in said questions; 6th, He appears in his capacity of attorney in fact of his old father, Don Teodoro, and states that during dry seasons he has caused the waters of the 'Cañitas' to be directed toward the petitioner's lands at the latter's request, lending him hands to clean the ditches; 7th, The foregoing answer covers this question; 8th, That his statements in regard to the foregoing questions are well-known facts. He is 40 years old, married, and a farmer.

"The fourth witness, Juan Díaz, testified under oath that he is a resident of the district, and in regard to the questions said: 1st, He is not disqualified; 2d, The statements therein are true; 3d, Likewise true; 4th, Undoubtedly true, he has seen the ditches being cleaned; 5th, Having lived near the lands in question he had occasion to verify the truth of the statements made in said question; 6th, He does not know; 7th, He is not concerned in said question; 8th, That his statements in regard to the foregoing questions are well-known facts. He is a native of Corsica, 43 years old, married, and a farmer.

"The fifth witness, Tomás Fradera, being sworn under oath, answers to the questions as follows: 1st, He is not disqualified; 2d, 3d, 4th and 5th, He is not concerned in said questions; 6th, He knows that not many days ago Don Domingo Olivieri obtained from the *Corregidor* of this city the appointment of a committee of investigation owing to his alleged scarcity of water, but that he had never received any request, either verbal or written, in that respect; 7th, Is answered by the foregoing; 8th, His statements in regard to the foregoing questions are well-known facts. He is a resident and native of this city, bachelor, landowner, and is 30 years old.

"On February 2, 1855, Domingo Olivieri requested the court to let him have, for two or three days, the record of the injunction pro-

ceedings pending in said court in regard to maintaining him in the possession of the waters needed on his cattle farm, in order to know the stage the proceedings were in, so as to take the proper action at the termination thereof.

"On February 13 of the same year the request is submitted to the court, which granted it on the same day, said record consisting of 12 pages. On February 3, 1855, the *alcalde, Corregidor,* of San Germán, certified that: Domingo Olivieri had come twice to him to complain that the brothers Fradera had obstructed, to his prejudice, the course of the creeks 'Cañita' and 'Mamey' in the ward of Sabana Yeguas by means of ditches and dams in order to irrigate their cane plantations to the injury of the farm of Olivieri; in consequence thereof the justice of the peace of that ward was ordered to compel the brothers, Fradera, to remove the obstructions, which was done by them according to the report of said justice of the peace.

"Then follows a letter written by the brothers, Fradera, to Domingo Olivieri, which reads as follows:

PLANTATION BEATRIZ,

LAJAS, *March 7, 1855.*

"DEAR SIR:

"We are in receipt of your favor, and we see thereby that you have been misinformed in regard to the obstructions in the waters. There is no doubt about this; but the information has been given by somebody other than ourselves, and in order to undeceive yourself please visit our plantation and you will see that the waters we use do not proceed from the source you suspect, but from a creek, the use of whose waters has been given us by Ramón Jacome Pagán, who had a right to dispose of the same, as its waters were used up within his own lands, none of his neighbors using them. Now that the word 'prejudice' is used, we would ask you to notify your herdsmen to keep a closer watch over your cattle to prevent any damage being done to your neighbors. We would like this reminder to be effective, and we beg to be,

"Your obedient servant,

(Signed)          TOMÁS FRADERA BROS.

"On February 14, 1855, Domingo Olivieri returns the record to the court, adding, in substance, the following statements:

"After a careful examination of the record I find the claims of my petition well grounded, and I might confine myself to the requests

contained in my first application without fear of being prejudiced by the statements of Tomás Fradera, as his statements are vague and no place is mentioned in regard to the matter, and this is the more to be noted if we consider that he has, in combination with Ramón Jacome Pagán, brought about some claim. But, as he has stated that he had never been informed by me, either verbally or in writing, in regard to the matter, it seems to me the proper thing to refer to some particulars in support of the justice of my claim and the correctness of the facts which gave rise to the same. Certainly, my first step, on being deprived of the waters, was to apply to the *corregidor* of this town for a remedy against the action of Fradera and Pagán in obstructing the waters, and I obtained the appointment of a committee of investigation which, after an inspection of the ditches caused to be made by Fradera Bros., advised the latter to settle the matter amicably. This they were ready to do, as they said they knew the damage that would be caused me; that in my place they would have done the same thing; and that they would come to my house, accompanied by Ramón Jacome Pagán, in order to submit proposals that would not prejudice me, which proposals could be specified and confirmed by writing, securing me in the possession of the amount of water that I might need, provided I gave them my consent to change the course of the creeks 'Cañita' and 'Mamey,' so that they could take the surplus of water in time of plenty. Seeing such good disposition for a settlement, the committee withdrew, but, as said settlement was not effected, I was compelled to apply again to the city authorities, and the justice of the peace was sent to see to it that the obstructions were removed, as can be seen from the certificate given by the *corregidor*. The waters came again to my property for a few days only, and then I applied for the injunction, which is the subject of these proceedings, as a better way of protecting my rights. But in order to accomplish this, apart from the granting of the remedies applied for, the disturbers, Fradera and Pagán, should be reprimanded, especially the former, since his statements as to never having received any request from me in regard to the waters are belied by the letter filed by me, having thus disregarded the sanctity of the oath, and such behavior, together with his purpose to dispossess me of my natural rights, deserves the censure of the court, and this I request with the imposition of costs and damages caused me, and further stating that I withdraw the offer, made in my first writing, of defraying the costs. I further beg the court to receive the testimony of the two members of the committee of investigation, namely, the commander of the barracks, Mr.

José Córdova, and the city lawyer, José María del Toro. The court proceeded to receive the evidence of the above-mentioned gentlemen and other witnesses.

"Testimony of José Córdova: On the 22d of the current month, after being sworn under oath, José Córdova stated that: Together with José María del Toro, in committee of investigation, he proceeded to the ward called Lajas Arriba, and after examining the ditches caused to be made by Tomás Fradera to divert the course of the creek 'Cañita' from its natural bed into the lands of Domingo Olivieri, advised Fradera to settle the matter amicably with the latter, and he answered that he was ready to do so, as he said he knew that Olivieri's interests would be prejudiced for want of water; that in Olivieri's place he would have brought the proper claim, and that in order to settle the matter he would go, together with Ramón Jacome, to his house in order to submit proposals that would not prejudice him, and said proposals would be set out in writing, securing him in the possession of the water needed by him, provided he gave them his consent to change the course of the creeks 'Cañita' and 'Mamey' so that they might use the surplus of water in time of plenty; the witness, together with the other member of the committee, withdrew without further action.

"José María del Toro, being sworn under oath on the same date, testified in identical terms as the foregoing.

"Testimony of Antonio Sánchez. After being sworn under oath and in regard to the eight questions propounded in the first writing, stated: 1st, He is not disqualified; 2d, Its contents are true, and he is in a position to testify to that, as he has lived near the creeks in question since the year 1825; 3d, Likewise true in every respect, without said water the property would be valueless; 4th, True, and he knows it by the reasons given in his answer to the second question; 5th, Likewise true; 6th, He is well informed as to the particulars therein referred to; that, besides knowing that Domingo Olivieri has complained on account of the lack of water and that committees have been appointed to investigate the matter, he has seen the ditches caused to be made by Fradera Bros., thus preventing the natural running of the waters into Olivieri's property; 7th, He is not concerned; 8th, His statements in regard to the foregoing questions are well-known facts. He knows that neglect in the cleaning of the ditches is the cause of the interruption in the flow of water, and this neglect on the part of Ramón Jacome Pagán and Fradera Bros., who oppose said cleaning, is beneficial to them as a means of using up

the water in their own plantations. He is a native and resident of this town, married, a farmer, and 60 years old.

The foregoing may be said to constitute the pleadings and the evidence in this injunction suit relied on as establishing rights claimed in the present litigation. On these premises the court of first instance of San Germán made substantially the following decree:

"On February 23, 1855, the record is submitted to the court, and on the 26th of the same month the court issued the following order, reading in substance as follows: Domingo Olivieri should be maintained in the possession and enjoyment of the waters of the creeks 'Mamey,' 'Mondongo' and 'Cañita' flowing along their natural course into his property situate in the ward of Lajas Arriba, and Fradera Bros. and Ramón Jacome Pagán should be enjoined to abstain in future from obstructing the natural flow into Olivieri's property of said creeks to their exclusive benefit by means of ditches, and otherwise, under the penalty prescribed by law in case of failure to do so, and the Justice of the Peace of said ward shall be directed to enforce this order and to report any infraction thereof. The costs of these proceedings are imposed in equal parts on Fradera Bros. and Ramón Jacome Pagán, and Tomás Fradera is warned to better respect in future the sanctity of the oath. And all this, without prejudice to their establishing any right they may have in an adverse proceeding, the right to which is hereby reserved to them.

"On the same date Olivieri was notified of such order. On the 27th of the same month a copy of said order was sent to the justice of the peace who, on March 2, reported the execution of said order. Tomás Fradera on March 5, 1855, and Ramón Jacome Pagán on March 13, 1855, were served with a copy of the same. On March 7 of the same year the record was sent to the appraiser of costs. On March 9 the costs were collected and on the 14th distributed among the interested parties.

"C. There follows a certified statement from the secretary of the District Court of Mayagüez, dated August 20, 1907, stating that he has not been able to find the record in regard to the injunction proceedings brought by Domingo Olivieri to maintain him in the enjoyment of the waters of the creek 'Cañita,' and, therefore, he could not deliver a certified copy of the same to counsel, Benito Forés, in the case No. 1407, *Rafael Muñoz* v. *Eurípides López.*

"D. The following is a copy of an agreement betweeen Domingo Olivieri and others in regard to the use of said waters, reading in substance as follows:

"In the ward of Sabana Yeguas and on June 20, 1855, before the notary, Maximino Rivas, there appeared Enrique Dacosta, Tomás Fradera on behalf of Fradera Bros., Ramón Jacome Pagán, and Domingo Olivieri, who stated that they were the owners of the creek 'Cañita,' and who, desiring to settle the matter amicably in regard to the use of the waters of said creek in their respective properties, agreed among themselves as follows: 1st. That they are interested in and coowners of the waters of the creek 'Cañita' and other tributaries emptying their waters into said creek; 2d. Dacosta and Fradera shall undertake the construction, at their own expense and within one year, of the ditches, dams, locks and all necessary work for an irrigation system, without any cost to Olivieri or to Ramón Jacome Pagán; 3d. Dacosta and Fradera further bind themselves to increase the supply of water of said creek with the waters from the creeks 'Mamey' and other tributaries, and to pay the expenses thereof; 4th. The main irrigation ditch must follow the bed of the creek 'Cañita,' and empty itself into the lands of Olivieri, the expenses of said basin to be defrayed by Dacosta, Olivieri and Fradera; 5th. Both Dacosta and Fradera shall not build locks other than those they may need for the irrigation of their lands, the working of their steam machinery, and for watering their cattle; and this also applies to the other parties to the agreement; 6th. The parties hereto shall have the use of the whole amount of water of the irrigation ditch on certain days and by turns, Dacosta being the first and Olivieri last; and in case it was deemed that Olivieri would be prejudiced by such arrangement owing to the length of the ditch, the latter shall be accorded an extra day, provided that five days are reserved to the other parties; 7th. Dacosta and Fradera bind themselves to keep the main irrigation ditch as far down as Olivieri's lands always cleaned; 8th. The parties hereto have the right to see and inspect the ditch whenever they wish to satisfy themselves that there are no obstructions therein; 9th. Any violations of this agreement by any of the parties hereto, either in its letter or spirit, shall be punished by a fine of $1,000, to be applied to repairing the vecinal road called 'Los Igueros'; 10th. Any doubt or misinterpretation arising out of this agreement shall be submitted to arbitrators, whose decision shall be unappealable and binding on all the parties thereto under the penalty of $1,000 on the party violating this clause; 11th. It is likewise

stipulated by the parties hereto that the water of the basin to be built in Olivieri's lands shall be for the common use of the cattle of Olivieri and Dacosta; and last, the parties hereto bind themselves to abide by this agreement and pledge their present and future possessions as guaranty for its fulfilment, renouncing the benefit of any law to which they might be entitled. This agreement is signed before witnesses by H. Dacosta, Tomás Fradera & Bro., Ramón Pagán, Domingo Olivieri.

"On July 6, 1857, the notary, Maximino Rivas, gave to Olivieri a certified copy of the foregoing agreement.

"E. Irrigation map with a note signed by the above parties and stating that the works shown on said map shall be carried out within one year from June 20, 1857.

"F. On February 8, 1909, Benito Forés applied to the Registrar of Property of San Germán for a certified statement in regard to the number of acres which the plantation 'Beatriz' had, the portions that were sold from the same, and whether in the records of these portions and of the property now belonging to Rafael Muñoz there are any statements in regard to water rights according to the provisions of the Civil Code. On February 12, 1909, the Registrar of Property of San Germán, José Miguel Márquez, issued the following certified statement reading in substance as follows:

"1st. The first record of the plantation 'Beatriz,' in the ward of Sabana Yeguas, is on folio 22, of volume three, municipality of Lajas, property No. 14, first entry, said property consisting of 2,000 *cuerdas.* Said record, dated February 7, 1888, was made in favor of Tomás Fradera Ojeda, without any mention therein or in successive records of any water rights in favor of said property.

"2d. On February 27, 1888, on folio 28, of volume 3, of Lajas, said property was recorded for the second time in favor of the heirs of Tomás Fradera Ojeda, with an area of 1,625 *cuerdas,* approximately.

"On March 21, 1888, and by marginal note on the first record it is stated that having wrongly included in said record 30 *cuerdas,* this piece of 30 *cuerdas* is recorded in a different entry on folio 65 of volume three, of Lajas.

"Later on, the following portions were sold from the plantation 'Beatriz':

"(a) Two hundred and twenty-one and forty-one hundredths *cuerdas* allotted to Segundo Tomás Fradera Pagán, recorded in his

favor on folio 195 of volume seven, of Lajas, property No. 395, first entry, on March 30, 1895.

"(b) Three and ninety hundredths *cuerdas* sold to Ulises López Carlo and recorded in his favor on July 2, 1895, on folio 90 of volume eight of Lajas, first entry.

"(c) Three hundred *cuerdas* sold to Antonia Sanmiguel Anavitarte and recorded in her favor on July 7, 1893, on folio 150 of volume six of Lajas, property No. 321, first entry. Said lady sold them to José Laureano Rodríguez Luiña, as per second entry, and the latter sold two portions, one of 50 *cuerdas* and another of 100 *cuerdas* to Ulises López Carlo, recorded in favor of the latter on folio 204 and folio 53, respectively, of Lajas, properties Nos. 569 and 698, first entries.

"Therefore, Rodríguez Luiña has still a right to the ownership of 150 *cuerdas* and López Carlo to another equal amount of 150 *cuerdas.*

"(d) One hundred and sixty-three and four hundredths *cuerdas* adjudicated to Tomás Fradera Pagán, according to the first entry of property No. 560 on folio 177 of volume 10 of Lajas, made on June 13, 1899. In the contract of sale thereof the parties thereto, who were the buyer, Doña Florencia, Doña Francisca Amalia and Doña Beatriz Fradera Pagán, stated: That if after making a proper survey of the portion conveyed it did not reach in a westerly direction a vecinal road leading to the water spring called 'Cañita,' which is the origin of the creek 'Cañita,' the other coowners are bound to cede the right of way for a road through the remainder of the plantation leading to said vecinal road and sufficiently wide for carts and for the building of a gate at the entrance of said portion. Tomás N. Fradera sold the aforesaid 163.04 *cuerdas* to Pedro Malaret Jordán, and the latter sold an undivided half of the same to Salvador and Juan Angel Tió Malaret, said property having been afterwards added together to another property called 'Luz,' consisting of 205.02 *cuerdas,* recorded on folio 203 of volume 14 of Lajas, property No. 769, first entry.

"(e) Twenty-five *cuerdas,* conveyed through an exchange, to Segundo Tomás Fradera Pagán and recorded in his favor on March 7, 1900, on folio 26 of volume 11 of Lajas, property No. 585, first entry.

"(f) Two hundred and forty-five *cuerdas* conveyed to Ulises López Carlo and recorded in his favor on March 8, 1900, on folio 30 of volume 11, of Lajas, property No. 586, first entry.

"(g) Five hundred and fifty-three and eighteen hundredths *cuerdas,* including the buildings, machinery and dwelling house which, under the name of plantation 'Beatriz,' became property No. 587,

entered on folio 37 of volume 11 of Lajas, and from which the following portions were sold:

"One. One hundred and eighty-three and forty-eight hundredths *cuerdas*, conveyed to the coowner, Doña Florencia Fradera Pagán, on dissolving the coownership with her sisters, Francisca Amalia and María Beatriz, and recorded in favor of the former on September 10, 1903, on folio 237 of volume 12, of Lajas, property No. 679, first entry, in which the following clause of their contract is set out: Fifth, It is agreed between the contracting parties that the rights that the plantation 'Beatriz' might have up to the present time to the waters of the creeks 'Cañita' and 'Mameyes,' flowing through and round said property, will remain undivided in favor of all the coowners, even after the separation of Doña Florencia, as the latter shall continue in the use of a third of said waters belonging to her.' On the death of Doña Florencia Fradera Pagán the property came by inheritance to her husband, Eurípidez López Quiñones, and to her brothers, the former acquiring the brothers' shares, thus becoming the sole owner of the property according to the fourth, fifth and sixth entries.

"Two. Twenty-five and eighteen hundredths *cuerdas* sold to Juan Tió Malaret and recorded in his favor on September 15, 1903, on folio 244, volume 12, of Lajas, property No. 681, first entry, of which Mr. Tió sold to Pedro Malaret Jordán an undivided half and one-half of the other half to Salvador Tió Malaret, according to the second entry, which gentlemen detached 24.48 *cuerdas* to be joined to the aforementioned plantation 'Luz,' and the remaining seventy hundredths of a *cuerda* was sold by them for a siding to Rafael Moñoz, according to the third entry.

"The remaining 344.52 *cuerdas*, together with the buildings, under the name of plantation 'Beatriz,' were sold to Rafael Muñoz Toro, according to the eighth entry on folio 141 of volume 13, of Lajas, property No. 587.

"Therefore, there was left a remainder from property No. 114 of 26.50 *cuerdas*, which were also sold to Rafael Muñoz Toro and recorded in his favor on Otober 8, 1906, on folio 92 of volume 12, of Lajas, entry No. 21.

"Except in those conveyances where it has been stated, no water rights in favor of the plantation 'Beatriz' have been specified in any of them.

"Three. From the foregoing it appears: That the present plantation 'Beatriz' consists of 344.52 *cuerdas*, which are recorded at present in favor of Rafael Muñoz Toro, without any mention being made of

water rights either in the deed of sale or in the record.   (Signed) José Miguel Marquez.''

''Juan A. Tió testified under oath: That he is the owner of land that belonged to the plantation 'Beatriz,' acquired by him by public deed; that the creek 'Cañita' has its origin on his property, but he does not use its waters; these waters, then, run through the lands of Euripides López, the plantation 'Beatriz,' lands of Ulises López, the farm 'Tomino,' belonging to Gavino Irizarry.  After leaving his property the creek crosses two roads, one starting from the property of Trujillo & Mercado, and the other the public road from Guánica to Boquerón, and then runs into another farm.

''Luis Irizarry testified under oath: That he is the son of Gavino Irizarry; his father is the owner of several properties in the municipal district of Lajas; that one of them is called 'Tomino,' and he bought it from Domingo Olivieri; and that it uses the waters of the ' Cañita.'

''At this stage the defendant admits that the creek in question crosses the public road.

''The witness proceeds as follows: That the waters of the 'Cañita' were not used last August in his father's property, because they were kept by obstruction in the plantation for irrigation purposes; that two or three times a week he had to send somebody to examine the creek, and the water was found to be detained by means of obstructions; that they used up the water and the only water that came down was through percolation; he was in charge of his father's property; that the bed of the creek was never cleaned; that he has never conferred with the *mayordomo* of Trujillo & Mercado in regard to said waters; that when the creek's water did not flow into the farm 'Tomino' he would send his *mayordomo* to remove the obstructions: that although the owners of the plantation 'Beatriz' never opposed it they would again obstruct the waters.  This took place in August.

''Cross-examined, he stated: That the course of the waters is toward his father's property and the intake was many *cuerdas,* about 30 or 40, distant from the farm; that there are other properties between the intake and his father's property; he has not heard of any other neighbor using said waters; that he was lessee of the plantation 'Beatriz' for two months and a half, and during that time he did not use the waters of the creek 'Cañita'; he did not live in the dwelling house on the plantation and he had a peón in charge and

used to go there in the morning during a couple of hours. He did not know whether the waters used there came from the creek 'Cañita.'

"Nicolás Parra testified under oath: He lives on the property of Capt. López Díaz, being the *mayordomo* of his property, through which runs the creek 'Cañita'; that in August of last year he was sent by Capt. López to the plantation 'Beatriz' to remove the obstructions, as the water did not flow into the above property, but was opposed by the *mayordomo* of 'Beatriz.'

"José Cintrón testified under oath: That he is *mayordomo* of Luis Irizarry; that he knows that Gavino Irizarry owns the farm 'Tomino,' where they use the waters of the creek 'Cañita'; that in August of last year said waters did not flow into the farm 'Tomino' because they were obstructed, and on inspection found they were diverted into the plantation 'Beatriz,' formerly the property of Rafael Muñoz and today belonging to Trujillo & Mercado; that the farm 'Tomino' always had had the use of the waters of the creek 'Cañita'; that for about three or four months they had not been able to use said waters as they had been used up by the plantation 'Beatriz.'

"José Negrón testified under oath: That he lives with Gavino Irizarry, the owner to-day of the farm 'Tomino'; that this farm used the waters of the creek 'Cañita'; that he was always looking after the waters and found that they were detained by the plantation 'Beatriz'; he had been employed in that farm by Mr. Rodríguez; that he occupied himself in cleaning the ditches and making the waters flow into the farm 'Tomino' and was never opposed by the owners of the plantation 'Beatriz'; but as soon as he turned his back they came and placed the obstructions again.

"José Montalvo testified under oath: That he lives in the property of Mr. López and knows the farm 'Tomino,' to-day the property of Mr. Gavino Irizarry and formerly belonging to Basilio Rodríguez, by whom he had been employed in said farm, and knows that this farm used the waters of the 'Cañita'; that sometimes there was no water and, sent by Rodríguez he would find the waters obstructed and would remove the obstructions so as to allow them to run into the farm 'Tomino' without any opposition from anybody; this took place during the dry seasons.

"José Ramón Ponce de León testified under oath: That he knows that Gavino Irizarry owns the farm 'Tomino' and uses the waters of the 'Cañita,' as he (the witness), as lessee of the farm 'Tomino' during four years used said waters to fill up the well or tank; that sometimes

the waters did not flow, but he would go with his peóns to clean the ditch and the water would flow, and nobody would interfere with him, as they all acknowledged the right he had to use said waters; that during the time of his lease he did not interfere with the rights of the plantation 'Beatriz' to a share of said waters, but that he took his own share. He would remove the obstructions in part but not altogether.

"Domingo Avilés testified under oath: That he knows the farm 'Tomino' the property of Gavino Irizarry and formerly the property of the witness's father, José Dolores Vélez; he was in charge of said farm and always used the waters of the 'Cañita'; that during the cane-crop season the plantation 'Beatriz' would be given the use of said waters for two days; when the waters did not flow he would go and remove the obstructions to let the water run into the tank at the farm 'Tomino'; that only once was he opposed while removing the obstructions by Don Lolo of the plantation 'Beatriz,' but he did not heed the opposition as his cattle were badly in need of water; that in August of last year there was very little water flowing into the farm 'Tomino'; that there were two ditches, one running into 'Tomino' and the other into 'Beatriz,' but there were no distributing appliances nor any concrete drain.

"Segundo T. Fradera testified under oath: That he had been coowner of the plantation 'Beatriz,' where he lived; he knows the farm 'Tomino,' belonging now to Gavino Irizarry, and that said farm uses the waters of the creek 'Cañita'; that the plantation 'Beatriz' has used said waters for its machinery; that every time they diverted the waters for the use of the plantation 'Beatriz' the obstructions were removed by people from the farm 'Tomino' even when the water was taken for the use of the machinery; that the owners of that plantation did not oppose the removal of the obstructions, but that they would again divert the waters when needed. The witness has withdrawn from the plantation 'Beatriz,' but he owns part of the lands of said plantation, but does not use said waters. He knows Rafael Muñoz Toro; they are friends but are not on speaking terms; that no quarrel has taken place and the estrangement arose on account of a siding of the plantation; that at the time he was on the plantation he does not remember that the waters were used for irrigating purposes, but he is not sure of that; that at that time his brother managed the plantation and he was for more than 14 years connected with the plantation; he was never the manager nor was he

in charge of the crops; that he used to visit the plantation as a co-owner.

"Ulises López testified under oath: That he knows the plantation 'Beatriz' and the farm 'Tomino,' now belonging to Gavino Irizarry and formerly to Domingo Olivieri; he has known for the last 34 years the plantation 'Beatriz,' several portions of which have been sold, and he owns two of these portions; knows that the farm 'Tomino' used the waters of the 'Cañita'; that on several occasions the waters have not reached that farm, as they were diverted to the plantation 'Beatriz,' formerly the property of the Estate Fradera and now of Trujillo & Mercado; that in August of last year the waters could not reach that farm because the ditches had been deepened, and even after removing the obstructions, all the water would flow into the plantation 'Beatriz'; the waters were taken through another channel and did not flow along the natural channel; that in the month of August the waters did not reach his property, so that he had to take his cattle away; that his sons took steps with the owners or lessees in order to get a remedy for that state of things, but without avail; at present very little water flows, as it has to pass through 25 *cuerdas* of land leased by Trujillo & Mercado, where a lot of water is used; the ditches are not cleaned; there are neither distributing device nor concrete canal, and there has never been any; during the 35 years he has known the farm he has never seen such a thing; knows that there exist in that neighborhood the creeks 'Mameyes' and 'Mondongo,' which do not empty their water into the 'Cañita,' as one of them runs into the plantation 'Beatriz' and the other toward the west, into the plantation 'Amistad'; knows that there was an action taken by the former owner of the farm 'Tomino,' but he does not know the result.

"Cross-examined by the defendant, he says: He has several times seen the obstructions, after the month of August, and all the water flowing into the plantation 'Beatriz'; that in the years 1893 and 1894 there were canes planted on those lands; knows Jorge Quiñones, the then manager of the plantation 'Beatriz,' and who planted canes on lands that had belonged to the plantation 'Beatriz'; that through his friendship with Jorge Quiñones the latter gave him water to irrigate his land from the 'Cañita' taken at a point further up and beyond the present intake and running toward his land along the natural bed of the creek 'Cañita'; that the plantation 'Beatriz' has improperly used up the waters during all these years for its canes, and that every time the creek has been diverted from its natural

course by the plantation 'Beatriz' the neighboring landowners have removed the obstructions; that he himself has done that.

"Eurípides López testified under oath:. That he is he owner of 183 *cuerdas* that had belonged to the plantation 'Beatriz,' by inheritance from his wife, who was a member of the Fradera Estate; that in the neighborhood of his property runs a creek called 'Cañita'; knows the farm 'Tomino' belonging to Gavino Irizarry, who uses its waters for his cattle; that the plantation 'Beatriz' and the portion belonging to him use part of said waters; during the rainy season the owner of the farm 'Tomino' did not object, but during the dry season he would send his men to remove the obstructions used for diverting the waters; that he never opposed the removal of the obstructions; that at present he does not use said waters; that he does not use them because the course of the creek has been changed and it does not run in a direction parallel to the Guánica-Boquerón Road; that on account of the use of said waters there was a suit brought by the former owner of the farm 'Tomino,' and he knows this, for he was the intimate friend of said owner, who used to stop at his house, and on one occasion he brought some papers, and carelessly left them there, in regard to an injunction proceeding taken by him against Tomás Fradera; that he has another copy of them in his house, and that the copy, which he saw, of Francisco Blasini, must be identical with his; that he (the former owner of the farm), inadvertently left it and he kept it in his wardrobe.

"Cross-examined by the defendant, he says: He owns that property since the month of October, 1903; that he had an action brought against Rafael Muñoz on account of the location of water drain and the change of the intake of the waters of the creek 'Cañita,' because he had changed the course of said creek to his prejudice, but now the creek was flowing along another channel without injury to his interests; he has not entered into any special agreement with Jorge Quiñones in regard to those waters; what took place was, that as he was the representative of the Fradera Estate, when the witness withdrew from the estate, as he had married one of the Fradera girls, and when, on drawing the deed, they came to the water clause, the witness said: 'I know that the plantation 'Beatriz' has no right to those waters,' and then he said to the witness: 'Since we use these waters let us insert a clause in regard thereto,' and this is the clause appearing in the deed of partition; that in regard to the right that the plantation 'Beatriz' might have in that respect the witness had a share in the same, and particularly in regard to another creek empty-

ing its waters into the 'Cañita,' which creek is a tributary whose waters were given him as a compensation; that Trujillo & Mercado entered into an agreement with the lessee of the witness, by which the lessee gave up the amount of water from the creek 'Cañita' to which he might be entitled; the witness used to take water from the 'Cañita' when he was allowed to do so by the lower tenements; at that time the lessee of the farm 'Tomino' was Bastilio Rodríguez, and it was he who used to send his men to block the intakes; when he needed the waters he would take them without permission from anybody, but would not make any opposition when they were taken away from him; when the water was plentiful nobody objected, but when it was scarce they would protest and block all the intakes, including that of the witness.

"José R. Nazario testified as follows: He is a native of San Germán and is very well acquainted with Gavino Irizarry, Rafael Muñoz and Mr. Mercado; does not remember having seen Mr. Trujillo; he is a notary in San Germán; he is very well acquainted with Maximino Rivas, who was his chief and was a notary, and whose orders he would execute; he remembers having made several copies of the record in an injunction proceeding taken by Domingo Olivieri against Tomás Fradera in regard to the creek 'Cañita'; the copies were taken from the original documents. (At this moment the witness is shown the copy introduced and which is contained in letter B of this record.) He knows the handwriting of said document; it is a faithful copy, written by himself with a quill.

"José Quiñones testified: He knows that Eurípides López owns a property in the municipal district of Lajas; he was, for three years, a partner of Eurípides López in an agricultural venture in which said property was included; the creek 'Cañita' runs through said property and its waters were used by them as well as by the farm 'Tomino' and the plantation 'Beatriz'; the farm 'Tomino' belonged then to Blasini and at present, he thinks, to the Irizarry people; that the course of said creek used to be obstructed by the man in charge of the farm 'Tomino' so that the waters could run into that farm.

"Cross-examined by the defendant, he says: He knows Jorge Quiñones; he worked with him as tenant of the plantation 'Beatriz,' planting sugar-canes and irrigating them with water from the creek 'Cañita' during three years, taking the water when needed and retaking it again when it had been diverted by others.

ORAL TESTIMONY ON BEHALF OF THE DEFENDANTS.

"Rafael Muñoz testified under oath: He appears as the owner of the plantation 'Beatriz' since 1906, and had leased it since 1905, buying it afterwards. He is, further, the owner of the plantation 'San Rafael,' bordering on 'Beatriz,' and has been connected with the plantation 'San Rafael' since 1870, first as manager, and since 1877 as lessee, and he became its owner by inheritance; has known the creek 'Cañita' and the use of its waters by the plantation 'Beatriz' since 1870; he was a friend of Fradera, whom he used to visit as a neighbor. The Guánica-Boquerón Road runs through lands of the plantation 'Beatriz,' and when passing along said road he could see that the waters of said creek were used by the plantation 'Beatriz' for irrigation purposes and for its machinery; while he was lessee of the plantation 'Beatriz' he used said waters without any opposition; he had a difference with Dr. López on account of the change of intake; that the waters have been used by him and the farm 'Tomino' until he leased his property to Trujillo & Mercado.

"Cross-examined by the plaintiff he stated: That the ditch made by Fradera in 1870 branched off from the natural bed of the creek 'Cañitas'; there was no distributing device nor any concrete drain either; the water is diverted by means of earth or clay; that he has never been opposed in doing that; that nobody would remove the obstructions because he always let flow the amount of water belonging to the farm 'Tomino'; he cannot state the amount of water allowed to the latter; that at present his property is leased to Trujillo & Mercado, whom he informed verbally, but does not remember if afterwards by writing, that he had a share in said waters; he thinks that Trujillo & Mercado use the amount of water to which they are entitled; in August of last year the foreman of Trujillo & Mercado asked his opinion as to whether he could use the whole amount of water, to which he replied in the negative because the farm 'Tomino' was entitled to one-half. A few days ago he went to see the intake and saw that part of the waters flowed into the plantation 'Beatriz,' and the other part into the farm 'Tomino,' but cannot state with precision the amount of water running into each.

"Claudio Fradera testified under oath: That he is 70 years old and has known the plantation 'Beatriz,' the farm 'Tomino' and the creek 'Cañita' since he was 18 years old; he is a farmer and worked as a tenant on said plantation all those years, and has always witnessed that the plantation 'Beatriz' and the farm 'Tomino' both used the waters

of the creek 'Cañita' each one-half; when the farm 'Tomino' did not need the water it was used by the plantation 'Beatriz' for irrigation; said water has been used for the machinery, the cattle and for irrigation when there was a surplus. He owns land adjacent to the farm 'Tomino' and he bought it with water rights; the plantation 'Beatriz' takes the water by means of a ditch made by Dr. López and the farm 'Tomino' by means of another ditch, the natural bed of the 'Cañita'; in August of last year he visited the intake several times, as he lives near; saw that the plantation 'Beatriz' took part of the water, but does not know if the amount left over went to the farm 'Tomino.'

"Emilio Estronce testified under oath: That he has lived on the plantation 'Beatriz' for over 20 years without interruption and for the last 18 years has been in charge of the irrigation of its lands, using one-half of the waters of the creek 'Cañita,' the other half going to the farm 'Tomino.'

"Cross-examined by the plaintiff he says: There are two ditches for the distribution of the water, but no distributing device nor concrete drains; knows that the water flows into both ditches but cannot state the amount going to each; that in August of last year he went nearly every day to the intake as there was very little water running into either ditch at that time; that in order to get some water for the plantation it was necessary to divert the water by means of some clay; that this obstruction was removed but he did not know who did it.

"Sandalio Pagán testified under oath: He was born in 1856, has been working as a laborer on the plantation 'Beatriz' since his childhood; knows that Gavino Irizarry owns the farm 'Tomino' and that the waters of the 'Cañita' have been used by the plantation 'Beatriz' and the farm 'Tomino'; when either of them needed water, they would send men to put in or remove obstructions and take the whole amount.

"Cross-examined by the plaintiff he says: That the plantation 'Beatriz' takes the water by means of a ditch parallel to the natural bed of the creek; there is no distributing device nor any concrete drain either; cannot state the precise amount of water going to either the plantation 'Beatriz' or the farm 'Tomino'; sometimes the former takes more than the latter or vice versa. He knows the creeks 'Mameyes' and 'Mondongo.'

"José Acosta testified under oath: He has lived for 18 years, since he was 10 years old, on the plantation 'Beatriz' and has worked there as a laborer; knows that both the plantation 'Beatriz' and the farm 'Tomino' used the waters of the 'Cañita'; there are neither dis-

tributing device nor concrete drain; cannot state the amount of water taken by the plantation 'Beatriz'; he often visited the intake.     In August of last year he was plowing and did not go to the intake.

"Jorge V. Quiñones testified under oath: That he had been, during 14 years, manager of the plantation 'Beatriz,' of which he had been coowner through his marriage with one of the female coowners; that the plantation 'Beatriz' used the waters of the creek 'Cañita,' and occasionally the water was allowed to run into the farm 'Tomino' of Gavino Irizarry, but into no other property; that there has never been any quarrel with him on account of the use of said water, but when the whole amount of water was taken up by others he would divert the waters of the creek toward the plantation; he used the water for the machinery and for irrigating the lands; he hears that at present they use the waters for irrigating; he went there two or three days ago and saw the water running as formerly, one part toward the plantation and the other downward as usual.

"Cross-examined by the plaintiff he says: That he is the husband of one of the female coowners of the plantation 'Beatriz' which plantation was sold to Mr. Muñoz; his wife has a mortgage on that property; when he was its manager the water was taken within lands of the plantation and afterwards the intake was changed to a ditch along the road where the waters are taken now; that it was always necessary to place obstructions to get the water when needed; when it was not needed no obstructions were placed; that said obstructions were removed in his absence and he was never able to find out who removed them; he does not know the amount of water taken by the plantation 'Beatriz' in August of last year as he was not there, nor can he state whether, at that time, there was any water running into the farm 'Tomino'; he had been informed that the farm 'Tomino' had a right to use those waters but he never saw any document in regard thereto; also that the plantation 'Beatriz' had a right to the use of the same; cannot state the amount of water used by either; there was never any distributing device nor any concrete drain either.

"Hermenegildo Fradera testified under oath: Was born in the year 1826, lives at the plantation 'Beatriz' at the house of Pepe Fradera, and said plantation belongs to Mr. Muñoz; has lived in said plantation since the year 1856, until two years ago he lived on or near the plantation and this plantation has always used the water of the creek 'Cañita' for its machinery and for irrigation purposes; that the intake of the water has been changed; that the waters were used by the plantation 'Beatriz' and the farm 'Tomino,' but cannot state the amount of water used by each; when the water was needed by the

plantation 'Beatriz' the course of the creek was obstructed and the obstruction would then be removed, he does not know by whom, and this was done during the night; cannot say whether there was ever any distributing device; there was no concrete drain.

"José M. Lugo testified under oath: That he is a resident of San Germán, merchant, has lived on the plantation 'Beatriz' since 1897 until 1908, and had a shop there; while he was there he learned that the waters of the 'Cañita' were used by the plantation 'Beatriz' and the farm 'Tomino.'

"Cross-examined by the plaintiff he says: That the plantation 'Beatriz' took the water by means of a ditch running parallel to the natural course of the creek; the waters were diverted into that ditch by means of obstructions; he has seen the intake, but there is neither any distributing device nor any concrete drain, and cannot state the amount of water used by either property; that he saw the intake in August of last year and the plantation 'Beatriz' was taking the usual amount of water; that during that month they were widening he ditch, which is done often to clean the same.

"Nicolás Vázquez testified under oath: He is 60 years old; was born and brought up on the plantation 'Beatriz' which had belonged to his grandparents; has always lived near the place, working in the lower part of the same; that the plantation 'Beatriz' used the waters for the machinery and other purposes; when there was any surplus it ran into the farm 'Tomino'; he has seen that the farm 'Tomino' has always used the waters of the said creek.

"Cross-examined by the plaintiff he says: The waters were taken at a place other than the natural bed of the creek; has been several times at the intake; does not know whether the farm 'Tomino' has any right to use said waters; there is no distributing device nor any concrete drain either; formerly there was no need of any obstruction but there is now; that the waters run into the farm 'Tomino' and the plantation 'Beatriz' through lands of Ulises López; that in the month of August there was scarcely any water running either way, and in particular there was very little water running into the plantation 'Beatriz'; that the people from the 'Tomino' would come and clear the ditch, as the cattle when drinking would dry up the creek.

"Mariano Antunes testified: He lives on the plantation 'Unión' about two kilometers away from the plantation 'Beatriz' where he had been employed for two years and a half by his uncle, Rafael Muñoz; that during the time he was at the plantation 'Beatriz' he saw that the waters of the 'Cañita' were used partly by the plantation 'Beatriz' and partly by the farm 'Tomino'; that the waters were used for

irrigation purposes and for the watering of cattle; he knows that on one occasion said waters were diverted into the land of Capt. López to irrigate his canes; this property belongs to Ulises López; he has seen that after passing the intake of the plantation 'Beatriz' part of those waters, instead of going to the farm 'Tomino,' have been used to irrigate López's property.

"Cross-examined by the plaintiff he says: That he does not know who owned that property before Ulises López."

Here concludes the abstract made from the evidence in this case, as shown by the statement contained in the record.

The primary question is not whether the evidence shows the right of the defendants to have been established to the use of two-thirds of the waters, but has the plaintiff shown his right or title to the use of all the waters flowing in the rivulet "Cañitas." As to the one-third of the said waters awarded to the plantiff, proof is unnecessary on his part, as the defendants expressly admit his title thereto. To give effect to the agreement entered into after the close of the injunction proceedings, such as is claimed by the plaintiff, he could only claim one-fourth of the waters; but he is awarded by the judgment more than that, to wit, one-third. But it is claimed in his behalf that one of the parties to this agreement of 1857, Dacosta, is not considered in the distribution made by the court below in deciding this case. If so he, Dacosta, not being a party to this litigation, can assert his rights at any time by a proper proceeding, recovering, if he shows that he has a right thereto, whatever his interest may be, both from the defendants and the plaintiff herein. The same may be said of the other third party, Angel Tió, who, though he was a witness in this case, not being a party, is not precluded by the judgment from asserting his rights in subsequent proceedings if he sees fit.

Evidently the trial court looked to the three tracts of land described in the complaint through which it was alleged that the brook "Cañitas" runs, and as it is shown in the pleadings and the proofs that the plaintiff owns one of these and the

defendants two, and the evidence supporting this view to some extent and being otherwise conflicting, awarded the use of the waters according to the claims set up in the answer presented by the defendant, and as far as the parties who appeared before the court are concerned appears to have attained substantial justice.

It is a well-known principle of the law of evidence, which must not be overlooked, that the burden of proof lies on the party holding the affirmative of the issue. In this case, as in nearly every other, the plaintiff must prove the allegations of his complaint, and his action must fail should no evidence be given on either side. (Sess. Acts of P. R. of 1905, p. 91; 1 Greenleaf on Evidence, sec. 74, and Taylor on Evidence, 233 and 341.) This principle is quite familiar in cases of ejectment in which, as everybody knows, the plaintiff must recover on the strength of his own title and not on the weakness of the claim made by the defendant in possession. (See cases decided by this court some years ago entitled *Bianchini* v. *Añasco*, 2 P. R. Rep., 484, and *Mouriño* v. *Carreras*, 2 P. R. Rep., 581.) The present case is, in that respect, quite analogous to one of ejectment and governed by similar general principles.

There is a great difference in the force required of evidence in criminal and in civil cases. In the former, the evidence must be sufficient to prove the guilt of the accused beyond a reasonable doubt; in the latter a mere preponderance of evidence is sufficient whereon to base a judgment in favor of the party in whose favor it turns. By preponderance of evidence is not meant a majority of the witnesses testifying in the case; but an excess in the weight of evidence, considering the testimony of the witnesses, the documental proof, and all the facts and circumstances attending the transaction. Neither does it matter by which party the witnesses are offered. Their testimony is to be considered in favor of the party whose case is sustained; so that the testimony of witnesses offered by the plaintiff may be in favor of the defend-

ant, and *vice versa.* When the evidence on behalf of both parties is closed, the judge or jury considers it as a whole and gives a decision in favor of that party whose case is sustained. (P. R. Law of Evidence, sec. 162; Laws of 1905, pp. 101 and 102; 1 Moore on Facts, secs. 5, 6 and 7, pp. 8-12.)

Although some of the witnesses for the defendant testified that the waters of the brook or creek "Cañitas" were formerly used in equal portions by the owners of the plantation "Beatriz" and the farm "Amparo," yet there is evidence to the contrary; and as the trial court has deemed it proper to divide the use of the waters between the parties in the proportion of two to one, considering the superior facilities of the trial court for weighing and reconciling conflicting evidence; we will not undertake to reverse the ruling in this respect.

The well-established rule is that the verdict of a jury based on conflicting evidence, which they have endeavored to reconcile, will not be disturbed, unless it appears from the record to have been caused by partiality, prejudice or passion, or is, for other reasons, manifestly unjust. The same rule applies to cases tried by the judge alone, without the intervention of a jury, as in the case at bar. Then, from the facts as stated in the record, the decision herein must be allowed to stand. (See the cases of *José Morales* v. *La Central Machete,* [9 P. R. Rep., 117] decided June 23, 1905; *Rafael Valentín Román* v. *The American Railroad Co. of Porto Rico,* [10 P. R. Rep., 52] decided January 29, 1906; *Quevedo* v. *Pino,* [15 P. R. Rep., 669] decided November 16, 1909; and *Aurelio y Felícita Morales y Oquendo* v. *Eleuterio Landrau y Paula Cruz,* [15 P. R. Rep., 761] decided December 18, 1909.)

In regard to the position taken by the appellant's counsel that because certain of the parties to the contract of 1857 did not comply with their obligations incurred therein, the partition of the water rights made among themselves should be disregarded, it need only be said that the contract of distribution itself provided a penalty of one thousand ($1,000) dollars, against any one of the parties who failed to comply there-

with; and that this penalty could have been enforced against the delinquent had any of the other parties to the contract so desired; but that the interests of the several parties in the use of the waters of the brook were not thereby forfeited nor disturbed. The contract of 1857 was a corollary to the award made by the primary court of San Germán two years before and effectually settled and established the rights and obligations of the parties thereto in the waters involved and was binding on all concerned.

As to the position of the plaintiff, that uninterrupted possession and use of the waters of this little stream for 20 years or more has given him the right to the continued use thereof, we need only say that such a proposition is not set out in his pleadings nor is the evidence sufficient to establish such a claim, had it been properly pleaded.

Nor can the waters of "Cañitas" be held to be public waters as such are defined under our laws, they must be considered as private waters, it being shown by the evidence that they have, since 1855, been used and considered as such.

The whole evidence adduced on the trial of a civil case must be taken together and carefully compared and weighed by the trial court and the final decision should go according to a preponderance of the evidence and the rules of law applicable thereto. It seems from the record that this was done as far as possible in the District Court of Mayagüez in the case now under consideration.

Inasmuch then as the plaintiff has failed to prove his allegations of title to the exclusive use of the waters of the brook "Cañitas," and as the defendant admits the claim of the plaintiff to the use of one-third of the said waters, and as the defendants own two of the three tracts through which the stream passes and the plaintiff one, and as the rights to the use of these waters were settled by an amicable agreement in the year 1857 by the owners of the lands at that time holding the same, and under whom the parties to this action now claim, and as the trial court appears to have given proper interpre-

tation to the evidence and correctly weighed the same, and also to have followed the laws in force in this Island in regard to waters and water rights, and as none of the propositions advanced by the appellant appear well founded, the judgment rendered by the District Court of Mayagüez, on March 6 last, should not be disturbed.

*Affirmed.*

Chief Justice Hernández and Justices Figueras, Wolf and del Toro concurred.